**WEITZMAN LAW OFFICES, LLC**
Kenneth S. Weitzman (NJ Bar No. 021451992)
Richard Straussman (NJ Bar No. 308992019)
425 Eagle Rock Ave., Suite 102
Roseland, NJ 07068
Tel.: (973) 403-9940
Fax: (973) 403-9944
kweitzman@weitzmanip.com
rstraussman@weitzmanip.com
    *Attorneys for Plaintiff,*
      *Across International, LLC*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ACROSS INTERNATIONAL, LLC,<br>    *Plaintiff,*<br><br>v.<br><br>SH SCIENTIFIC CORP., SH SCIENTIFIC CO. LTD. (f/k/a SAMHEUNG ENERGY CO., LTD.), and Mr. JIHOON BANG,<br>    *Defendants*. | DOCUMENT FILED ELECTRONICALLY<br><br>Civil Action No. _____<br><br>COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT, PATENT INVALIDITY & PATENT UNENFORCEABILITY, COMMON LAW FRAUD, AND CIVIL CONSPIRACY.<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Across International, LLC ("Across"), by and through its undersigned attorneys, complains of Defendants, SH SCIENTIFIC CORP. and SH SCIENTIFIC CO. LTD. (f/k/a SAMHEUNG ENERGY CO., LTD.) ("SH SCIENTIFIC") alleging as follows:

### NATURE OF THIS ACTION

1.     This is a declaratory judgment action for a declaration of non-infringement, invalidity and unenforceability of U.S. Patent No. 10,413,863 entitled "Cold Trap" and for common law fraud and tortious conspiracy under the law of the State of New Jersey.

2.     Based upon the facts set forth below there is an actual, justiciable, case or controversy regarding infringement, validity and unenforceability of the '863 Patent.  A judicial

declaration that the claims of the '863 Patent are invalid, not infringed, and/or unenforceable is necessary and appropriate at this time so that Plaintiff, Across, can ascertain its rights and duties with respect to the '863 Patent.

## THE PARTIES

3.     Plaintiff, Across International, LLC ("Across") is a Limited Liability Company organized under the laws of the State of New Jersey with headquarters at 111 Dorsa Ave, Livingston, New Jersey 07039. Across is in the business of, among other things, supplying glassware and laboratory equipment to universities, research facilities and labs, including, for example, to Massachusetts Institute of Technology, Stanford University, Columbia University, Georgia Tech, the United States Department of Energy, NASA, the U.S. Army, Navy, Air Force, 3M, GE, DuPont, and the U.S. National Laboratories.

4.     Upon information and belief, Defendant, SH Scientific Corp. (hereafter "SH USA"), is an Oregon corporation having a primary place of business at Suite 343 12725 SW Millikan Way, Beaverton, OR 97005 and mailing address of 14717 NW Cosmos St., Portland, OR 97229.

5.     Upon information and belief, Defendant, SH Scientific Co., Ltd. (hereafter "SH Korea"), is a corporation (formerly known as Samheung Energy Co., Ltd.) organized under the laws of South Korea, having its headquarters and primary place of business at 387-1, Nosong-ri, Yundong-myun, Sejong City, Korea.

6.     Upon information and belief, defendant, Mr. Jihoon Bang, is an individual, a Vice President of SH Korea, and President of SH USA. and has an address of 14717 NW Cosmos St., Portland, OR, 97229.

7.     SH USA and SH Korea are collectively referred to as "the SH Defendants" herein and the SH Defendants and Mr. Jihoon Bang are collectively referred to as "Defendants" herein.

8.     Upon information and belief, the SH Defendants import, distribute and sell laboratory equipment, including equipment that directly competes with, *inter alia*, Across's T40 Cold Trap.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction of this case under 28 U.S.C. §2201, §2202 and §§1331, 1338(a), as a declaratory judgment action under the Patent Laws, Title 35 of the United States Code.  The court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a).

10.     Defendants are subject to this Court's specific personal jurisdiction because of the intended and actual effects of Defendants in making accusations of patent infringement against Across.  Those assertions have caused an effect on Across within this Judicial District.

11.     Venue is proper in this district under 28 U.S.C. §§1391(b)-(c) because Across is headquartered in this Judicial District, and Defendants have directed accusations of infringement to Across within this Judicial District and, in addition, upon information and belief, the SH Defendants directly and by, through, and/or with the assistance and authorization of Mr. Jihoon Bang, have been and continue to be purposefully and voluntarily directing the SH Defendants' sales activities, including offering and selling products that compete with the products accused of infringement, toward this forum to obtain the benefits thereof.

## THE PATENT AT ISSUE

12.     Upon information and belief, on September 17, 2019, U.S. Patent No. 10,413,863 (hereinafter "the '863 Patent") was issued by the United States Patent Office based upon a US

patent application filed on February 28, 2017.  That U.S. patent application claims priority to a Korean patent application purportedly filed on November 22, 2016.  A copy of U.S. Patent No. 10,413,863 is attached hereto as Exhibit A.  Upon information and belief, SH Korea is the record owner of the '863 Patent, and based upon publicly available information, SH USA has no rights in or to the '863 Patent.

13.     In September 2018, prior to any substantive action was taken by the U.S. Patent Office, Defendant SH Korea's attorney, Mr. Kurt A. Rohlfs, assumed responsibility for the prosecution of the application that issued as the '863 Patent.

**DEFENDANT SH KOREA'S FRAUDULENT PROCUREMENT OF THE '863 PATENT**

14.     At the February 28, 2017 filing of the U.S. Patent Application, Defendant, SH Korea, through its attorneys, cited two Korean prior art references to the Patent Office, KR10-2000-0056317A, dated September 2000, and KR10-2006-0013926A, dated February 2006, both of which were owned by Samsung ("the Samsung Patents"), upon information and belief, an entity unrelated to SH Korea.

15.     At no time from the February 28, 2017 filing date through the September 17, 2019 issue date, did the named inventors on the '863 Patent, Defendant SH Korea, their attorney, Mr. Kurt A. Rohlfs, who handled the prosecution of the U.S. Patent application that issued as the '863 Patent, or anyone else associated with the preparation, filing and prosecution of the U.S. patent application that issued as the '863 Patent, cite any prior art to the U.S. Patent Office, other than the Samsung Patents.

16.     More specifically, none of the named inventors on the '863 Patent, Defendant SH Korea, its attorney, Mr. Kurt A. Rohlfs, nor anyone else, having a duty of disclosure pursuant to 37 CFR 1.56, associated with the filing and prosecution of the U.S. patent application that issued

as the '863 Patent cited <u>anything</u> regarding SH Korea's own <u>prior art products</u> which were more material than any of the references considered by the US Patent Office in allowing the application to issue as the '863 Patent.

17. Upon information and belief, the named inventors on the '863 Patent, SH Korea and/or its attorney, Mr. Rohlfs, willfully and intentionally did not disclose anything to the US Patent Office that would advise the Patent Examiner of the fact that SH Korea had been publicly offering for sale, and selling, cold traps to at least Plaintiff (under Model Nos. SH-CTBR1 & SH-CTBR2 (later changed to Model "T40")) since at least November 17, 2014 (more than 2 years prior to the filing date of the Korean patent application, and more than 2¼ years prior to the filing date of the US patent application that issued as the '863 Patent). As a matter of record fact, no persons having a duty of disclosure, under 37 CFR 1.56, with respect to the US patent application that issued as the '863 Patent, disclosed <u>any</u> information, in any form, to the US Patent Office regarding the SH Korea SH-CTBR1/SH-CTBR2/T40 products.

18. Upon information and belief, the named inventors on the '863 Patent, SH Korea and/or their attorney, Mr. Rohlfs, intended to mislead and/or deceive the US Patent Office into allowing the patent application that issued as the '863 Patent. But for the intentional non-disclosure of the Model SH-CTBR1/SH-CTBR2/T40 cold traps offered and sold by SH Korea, the '863 Patent would <u>never</u> have issued, since those products established (and compelled a conclusion of), by themselves or in combination with other information, a *prima facie* case of unpatentability of the claims at all times during the prosecution. More specifically, prior to the earliest effective filing date for the '863 Patent, the Model SH-CTBR1/SH-CTBR2/T40 products met all of the limitations of the claims as filed in the US Patent Application that issued as the '863 Patent, and, as shown in Exhibit B attached hereto, meet all of the claims of the '863 Patent

5

as issued, rendering the SH Korea Model SH-CTBR1/SH-CTBR2/T40 products highly material prior art.

19.   In addition, upon information and belief, the named inventors on the '863 Patent, SH Korea and/or its attorney, Mr. Rohlfs, had the specific intent to mislead and/or deceive the US Patent Office into allowing the application that issued as the '863 Patent.  This is because the arguments asserted in favor of patentability submitted to the Patent Office on April 29, 2019 could not have been made had they disclosed the SH Korea Model SH-CTBR1/SH-CTBR2/T40 cold traps to the US Patent Office.  Specifically, by failing to disclose those products, the patent application owner, SH Korea, and its attorney were able to make arguments they could not have otherwise made, intending that the Patent Office rely upon those arguments, stating:

> The Examiner rejected claims 1-17 under 35 U,S,C, § 103 as being unpatentable over Muse et al., U.S. Patent No, 8,408,013 (Muse) in view of Welbourn U.S. Patent No, 3,154,320 (Welbourn). Welbourn is cited only for disclosing freezing steam. Muse discloses a moisture trap for a vacuum pump where an insulated cooling chamber 14 is placed on a support 25 having downwardly-directed radiator fins 28. This radiator assembly is encased in a housing 31.

> The assembly of Muse differs markedly from the present invention, where an insulated cold trap is suspended through a hole in the top surface of an enclosure. As noted above, the moisture trap of Muse is structurally supported from below. Accordingly, independent claims 1 and 10 have each been amended to recite the limitation of "a trap portion suspended by a flange of the trap portion through a first receiving hole in the upper horizontal surface to extend at least partially within the main body, the trap portion capable of freezing evaporated steam supplied from the vacuum dryer when the main body is connected to the exhaust line." Muse does not disclose this. Moreover, independent claim 1 has been amended  to recite the limitation of "an insulation portion installed between the upper horizontal surface of the main body and the trap portion and that blocks cold of the trap portion from being conducted to the upper horizontal surface of the main body, the insulation portion supporting the flange." Since the insulated cooling chamber 14 of Muse is supported from below, there is no "upper horizontal surface of the main body" spaced apart from the cooling chamber 14 that an "insulation portion" could be placed between. Thus, independent claim 1 further distinguishes over Muse for this reason, as do dependent claims 2-9.

> Independent claim 10 as amended,  recites the limitations of "a trap portion having a trap chamber suspended downwardly through [al receiving hole

from [an upper] horizontal surface of [a] main body" and "the trap portion having a support flange that is supported by but spaced apart from the upper surface of the main body to prevent heat exchange between the main body and the trap portion." Thus, independent claim 10 distinguishes over the cited prior art for the same reasons as does claim 1, as do its dependent claims 11-17.

In view of the foregoing amendments and remarks, the applicant respectfully requests reconsideration and allowance of claims 1-17

20.     The structure of the SH Korea Model SH-CTBR1/SH-CTBR2/T40 cold trap products at least sold to Across between 2014 and November 2016, squarely refute, and/or are entirely inconsistent with, the positions taken by SH Korea and its attorney, Mr. Rohlfs, in opposing the arguments of unpatentability asserted by the Patent Office, and asserting patentability over the cited prior art.

21.     The prior art Model SH-CTBR1/SH-CTBR2/T40 cold trap products sold by SH Korea are of the highest materiality because they satisfy the aspects argued as missing from the prior art.  Specifically (as shown in Exhibit B hereto), the 2014 through November 2016 Model SH-CTBR1/SH-CTBR2/T40 cold trap products sold by SH Korea had "an insulated cold trap is suspended through a hole in the top surface of an enclosure" as well as "a trap portion suspended by a flange of the trap portion through a first receiving hole in the upper horizontal surface to extend at least partially within the main body, the trap portion capable of freezing evaporated steam supplied from the vacuum dryer when the main body is connected to the exhaust line."  In addition, those products also had "an insulation portion installed between the upper horizontal surface of the main body and the trap portion and that blocks cold of the trap portion from being conducted to the upper horizontal surface of the main body, the insulation portion supporting the flange."  Those products additionally had "a trap portion having a trap chamber suspended downwardly through [a] receiving hole from [an upper] horizontal surface of [a] main body" and

"the trap portion having a support flange that is supported by but spaced apart from the upper surface of the main body to prevent heat exchange between the main body and the trap portion."

22. That the US Patent Office relied upon the misleading and deceptive arguments by SH Korea and its attorney, Mr. Rohlfs, is squarely evidenced by the patent examiner's statement of reasons for allowance, which states:

> [A]pplicant's amendments focusing on in claim 1 "suspended by a flange of the trap portion through a first receiving hole in the upper horizontal surface to extend at least partially within the main body" in combination with "an insulation portion installed between the upper horizontal surface of the main body and the trap portion" and "a trap portion having a trap chamber suspended downwardly through the receiving hole... having a support flange that is supported by but spaced apart from the upper surface of the main body to prevent heat exchange" in claim 10 renders the claims allowable.

### THE ACROSS PRODUCTS ACCUSED OF INFRINGEMENT

23. Since late 2014/early 2015, Across has offered for sale and sold "T40 Cold Trap" products. Across has a right to make, use, sell, offer for sale, import and export its T40 Cold Trap products accused of infringement of the '863 Patent and intends to continue to do so.

24. Between, November 2014 and January 2018, Across purchased its T40 Cold Trap products from Defendant SH Korea. Thereafter, Across stopped purchasing T40 Cold Trap products from SH Korea and began manufacturing its own T40 Cold Trap products, which it began selling in September 2018.

25. The T40 Cold Trap products sold by Across since September 2018 are, in all material respects, structurally identical to the prior art T40 cold trap products purchased by Across from SH Korea.

### DEFENDANTS' WRONGFUL ASSERTIONS OF INFRINGEMENT
### USING A PATENT THAT THEY KNEW WAS INVALID

26. On October 29, 2019, the SH Defendants, through their counsel, Mr. Kurt A. Rohlfs ("Mr. Rohlfs"), sent a "Cease and Desist" letter to Plaintiff asserting that the T40 Cold

Traps sold by Across infringed the '863 Patent.  Mr. Rohlfs is the same counsel who prosecuted the application that issued as the '863 Patent.

27.     In sending the Cease and Desist letter to Across, in conspiratorial concert, all of the Defendants, along with their counsel, Mr. Rohlfs, collectively upon information and belief, intentionally and willfully ignored the relevant <u>structural identity</u> between SH Korea's prior art Model SH-CTBR1/SH-CTBR2/T40 cold trap products and the Across T40 Cold Trap products, or did so <u>in spite of</u> that knowledge, in either case with the specific intent to harm or wrongfully eliminate a direct competitor of the SH Defendants from this market, or to use the squarely invalid, improperly-obtained, patent to improperly and illegally exact payment from Across.

28.     In furtherance of their conspiracy, on November 6, 2019, Defendant, Mr. Jihoon Bang, (upon information and belief, SH USA's President and SH Korea's Vice President, acting in those capacities on behalf of both entities, and in his individual capacity), called Mr. Sam Huang, Across's Principal Member and demanded that Plaintiff either stop selling its T40 Cold Trap products or pay the SH Defendants a license fee, otherwise the SH Defendants would sue Across for infringement of the '863 Patent.

29.     The infringement accusations are objectively baseless when the existence of SH Korea's prior art Model SH-CTBR1/SH-CTBR2/T40 cold trap products is known.  None of the Defendants, nor the SH Defendants' attorney Mr. Rohlfs, could realistically expect success on the merits for their accusations, given the fraud committed on the US Patent Office in obtaining the '863 Patent by failing to disclose the structural identity between SH Korea's prior art Model SH-CTBR1/SH-CTBR2/T40 cold trap products and the accused Across T40 Cold Trap products. Thus, notwithstanding their knowledge and/or willful ignorance, the SH Defendants, along with Mr. Jihoon Bang, and the SH Defendants' attorney, Mr. Rohlfs, have collectively shared a

conscious commitment to a common scheme designed to achieve unlawful objectives through the infringement assertions, with the subjective intent to harm and/or interfere with Plaintiff's business relationships.

30.     Alternatively, Defendants' accusations are also objectively baseless because, to the extent Defendants would assert that SH Korea's prior art Model SH-CTBR1/SH-CTBR2/T40 cold trap products do not meet one or more limitations of any of the '863 Patent claims, and thereby do not invalidate such claim(s), than by virtue of the identity of structure to the Across T40 Cold Trap products, the Across T40 Cold Trap products would also necessarily not infringe for the same reason.

## THE '863 PATENT IS NOT INFRINGED

31.     The T40 Cold Trap products, sold since September 2018, all use a prior art removable glass cold trap that is independent of the T40 Cold Trap products.  Those glass cold traps are used to condense fluid from a gas introduced therein.  A portion of the base of those cold traps extend into a fluid bath that is part of the T40.  The fluid bath is cooled by cooling coils therein.

32.     To the extent Defendants and the SH Defendants' attorney would assert that SH Korea's prior art Model SH-CTBR1/SH-CTBR2/T40 cold trap products do not meet one or more limitations of any of the '863 Patent claims, the '863 Patent is not infringed by virtue of the identity of relevant structure(s) between the Across T40 Cold Trap products and the SH Korea's prior art Model SH-CTBR1/SH-CTBR2/T40 cold trap products, in that the Across T40 Cold Trap products would necessarily not infringe because they at least lack one or more of the same required elements of the claims, such as those set forth in paragraphs 33 through 40 herein.

33.     The accused Across T40 Cold Trap products at least do not have "a main body connectable to an exhaust line between a vacuum dryer and a vacuum pump" as required in Claim 1.

34.     The accused Across T40 Cold Trap products at least do not have an "insulation portion" installed between the upper horizontal surface of the main body of the T40 Cold Trap products "that blocks cold of the cold trap portion from being conducted to the upper horizontal surface of the main body as required in Claim 1.

35.     Claims 2-9 all depend, directly or indirectly from Claim 1.  Since the accused Across T40 Cold Trap products do not infringe Claim 1, those products cannot infringe dependent Claims 2-9.  In addition, when the claims of the '863 Patent are properly construed, the accused Across T40 Cold Trap products lack one or more further aspects recited in dependent Claims 2-9.

36.     The accused Across T40 Cold Trap products at least do not have "a trap portion having a trap chamber" as required in Claim 10.

37.     The accused Across T40 Cold Trap products at least do not have "a trap chamber . . . rigidly retained within the receiving hole and connectable to a vacuum dryer and a vacuum pump" as required in Claim 10.

38.     The accused Across T40 Cold Trap products at least do not have "the main body is connected to the exhaust line" as required in Claim 10.

39.     The accused Across T40 Cold Trap products sold since September 2018 at least do not have a "trap portion" that will "prevent heat exchange between the main body and the trap portion" as required in independent Claim 10.

40.     Claims 11-17 all depend, directly or indirectly from Claim 10.  Since the accused Across T40 Cold Trap products do not infringe Claim 10, those products cannot infringe dependent Claims 11-17.  In addition, when the claims of the '863 Patent are properly construed, the accused Across T40 Cold Trap products lack one or more further aspects recited in dependent Claims 11-17.

### INVALIDITY OF THE '863 PATENT

41.     The '863 Patent is invalid and unenforceable for failure to comply with one or more of the patentability conditions in the Patent Laws at 35 U.S.C. §102, §103, and §112.

### *The '863 Patent Is Invalid Under 35 U.S.C. §102 And/Or 35 U.S.C. §103*

42.     As set forth in Exhibit B hereto, each and every element of each of claims 1 through 8, 10 through 15, and 17 of the '863 Patent are invalid under 35 U.S.C. §102 as anticipated by SH Korea's prior art Model SH-CTBR1/SH-CTBR2/T40 cold trap products manufactured by SH Korea for Across prior to the earliest effective filing date to which the '863 Patent could be entitled.

43.     In addition, since as early as 1951 (*i.e.*, for more than 60 years prior to the '863 Patent's earliest effective filing date), the use of a circumferential flange to support a trap portion of a cold trap in a vertical position and that is insulated about its periphery to prevent heat transfer has been known (Exhibit C attached hereto)).

44.     Still further, multiple prior art commercial products anticipate (under 35 U.S.C. §102) at least most of the claims of the '863 Patent since, in all material respects, they also have the identical, or near identical, structure to SH Korea's own prior art T40 Cold Trap sold to Across, and/or, independently (individually or in combination) render all of Claims 1-17 of the '863 Patent obvious (under 35 U.S.C. §103).  Those commercial products include at least: the

Thermo Savant UVS400 (Exhibit D hereto), the Hetotrap CT 60e (Exhibit E hereto), the Operon CT-50 series cold traps (Exhibit F hereto), the CentriVap cold traps (Exhibit G hereto), the SP Industries FTS vapor traps (Exhibit H hereto), the Thermo Scientific RVT vapor traps (Exhibit I hereto), the Yamato CA300/800 cold traps (Exhibit J hereto), the Daihan Scientific WCT cold trap bath (Exhibit K hereto); and the Abbess Instruments cold traps (Exhibit L hereto).

45.     Upon information and belief, the commercial products of Exhibits D through L hereto are all prior art to the '863 Patent because they were made, in public use, offered for sale, sold, and/or were otherwise available to the public, prior to the '863 Patent's earliest effective filing date.

46.     Upon information and belief, as exemplified by Exhibits D through L, the commercial products of Exhibits D through L hereto were all also described in printed publications prior to the '863 Patent's earliest effective filing date.

### Claims 3, 7, 9, 12, 13, and 15 through 17 Are All Also Invalid For Failure To Satisfy 35 U.S.C. §112

47.     In addition, each of Claims 3, 7, 9, 12, 13, and 15 through 17 are invalid for failure to satisfy the requirements of 35 U.S.C. §112.

48.     Dependent Claim 3 recites, in pertinent part, "the insulation portion prevents any contact between the trap portion and the main body."  This aspect of the claim is belied by the disclosure when Claim 3 is considered in light of the written description and drawings because, as shown and described, only the flange and a small portion of the sidewall of the trap portion is insulated from the main body.  A larger section of the trap portion than the insulated part of the trap portion is irrefutably in contact with the main body.  Accordingly, Claim 3 is invalid.

49.     Dependent Claim 7 recites, in pertinent part, "the insulation portion completely separates the trap portion from the main body."  This aspect of the claim is belied by the

disclosure when Claim 7 is considered in light of the written description and drawings because, as shown and described, <u>only</u> the flange and a small portion of the sidewall of the trap portion is insulated from the main body.  A larger section of the trap portion than the insulated part of the trap portion is irrefutably in contact with the main body.  Accordingly, Claim 7 is invalid.

50.      Dependent Claim 9 recites, in pertinent part, "the trap portion, insulation portion, and main body each include a plurality of respective fastening apertures that, when coaxially aligned, . . ."  There is absolutely no disclosure in the '863 Patent whatsoever of (*i.e.*, no disclosure support for) the "trap portion" having "a plurality of . . . fastening apertures[.]" Accordingly, Claim 9 is invalid.

51.      Dependent Claim 12 recites, in pertinent part, "the horizontal surface is a flanged surface supported by the insulation portion."  The only antecedent for "the horizontal surface" is recited in independent Claim 10, but that "horizontal surface" is of the "main body." There is no disclosure of that main body horizontal surface being "flanged," nor is there any disclosure of the main body being supported by the insulation portion.  Rather, the entire disclosure teaches the opposite - the main body supports the insulation portion.  Accordingly, Claim 12 is invalid.

52.      Dependent Claim 13 recites that "the trap portion extends through the first receiving hole and the and [*sic*] second receiving hole without contacting the main body.  This aspect of the claim is belied by the disclosure when Claim 13 is considered in light of the written description and drawings because, as shown and described, a larger section of the trap portion than the insulated part of the trap portion is irrefutably in contact with the main body. Accordingly, Claim 13 is invalid.

53.      Dependent Claim 15 recites, in pertinent part, "the insulation portion completely separates the trap portion from the main body."  This aspect of the claim is belied by the

disclosure when Claim 15 is considered in light of the written description and drawings because, as shown and described, a larger section of the trap portion than the insulated part of the trap portion is irrefutably in contact with the main body.  Accordingly, Claim 15 is invalid.

54.     Dependent Claim 16 recites, in pertinent part, "the trap portion, insulation portion, and main body each include a plurality of respective fastening apertures that, when coaxially aligned, . . ."  There is absolutely no disclosure in the '863 Patent of (*i.e.*, no disclosure support for) the trap portion having "a plurality of . . . fastening apertures[.]"  Accordingly, Claim 16 is invalid.

55.     Dependent Claim 17 recites "there is no contact between the trap portion and the main body.  This aspect of the claim is belied by the disclosure, when Claim 17 is considered in light of the written description and drawings, because the '863 Patent irrefutably has a section of the trap portion in contact with the main body.  Accordingly, Claim 17 is invalid.

56.     In order for Across to clear the air and establish its legitimate right to make, use, sell, offer for sale, import and export, the accused Across T40 Cold Trap products vis-à-vis the '863 Patent, by virtue of non-infringement by Across and/or the invalidity and unenforceability of the '863 Patent, and to obtain recompense for the damage caused to Across by virtue of Defendants' tortious acts and conspiratorial conduct in connection therewith which violate N.J. State law, Across asserts the following causes of action.

**COUNT I: DECLARATION OF NON-INFRINGEMENT OF THE '863 PATENT**

57.     Across repeats and re-alleges the allegations in preceding paragraphs 1-55 as though fully set forth herein.

58.     Defendants have asserted that the Across T40 cold trap products infringe the '863 Patent and, through Mr. Bang and their attorney, Mr. Rohlfs, have threatened to bring suit against Across for the alleged infringement.

59.     The structure of the Across T40 cold trap products is different from the claims of the '863 Patent and, hence, do not infringe the D310 patent.

60.     An actual, present and justiciable controversy exists with respect to the Across T40 Cold Trap products vis-à-vis the claims of the '863 Patent and a judicial declaration is necessary under the circumstances to resolve this controversy.

61.     Plaintiff is entitled to a declaratory judgment that the making, using, selling, offering for sale, within the United States, or the importation into the United States, of the Across T40 Cold Trap products do not infringe any enforceable claim of the '863 Patent, directly, indirectly, contributorily or otherwise.

## COUNT II    (DECLARATION OF INVALIDITY OF THE '863 PATENT)

62.     Across repeats and re-alleges the allegations in preceding paragraphs 1-61 as though fully set forth herein.

63.     The claims of the '863 Patent are all fully disclosed by the prior art and, therefore, the '863 Patent is invalid.

64.     To the extent the Across T40 Cold Trap products would infringe any claim of the '863 Patent, such claim would be invalid as it would also cover, or at the very least, be a trivial variation of, the prior art SH Korea Model SH-CTBR1/SH-CTBR2/T40 cold trap products made, used, offered for sale, sold and described in printed publications before the earliest effective filing date claimed by the '863 Patent.

65.     The claims of the '863 Patent are all invalid on the grounds that the invention claimed therein fails to meet the conditions of patentability specified in Title 35 of the United States Code, specifically, 35 U.S.C. §§102, 103, and 112.

66.     An actual, present and justiciable controversy exists with respect to the validity of the '863 Patent.

### COUNT III    (DECLARATION OF UNENFORCEABILITY OF THE '863 PATENT)

67.     Across repeats and re-alleges the allegations in preceding paragraphs 1-66 as though fully set forth herein.

68.     Prior to filing the application that issued as the '863 Patent, upon information and belief, SH Korea and one or more of the named inventors on the '863 Patent knew SH Korea was making, using and selling, in the U.S. and elsewhere, the Model SH-CTBR1/SH-CTBR2/T40 cold trap products.

69.     Prior to filing the application that issued as the '863 Patent, SH Korea and the named inventors knew that the Model SH-CTBR1/SH-CTBR2/T40 cold trap products were described in printed publications.

70.     The SH Korea Model SH-CTBR1/SH-CTBR2/T40 cold trap products were of the highest materiality to the claims for which SH Korea sought patent protection.

71.     During prosecution of the application that issued as the '863 Patent, despite the materiality of the SH Korea Model SH-CTBR1/SH-CTBR2/T40 cold trap products, SH Korea, th named inventors and/or its attorneys made a deliberate and intentional decision to withhold the SH Korea Model SH-CTBR1/SH-CTBR2/T40 cold trap products and/or printed publications describing such products from the Patent Office in order to secure allowance of the application that issued as the '863 Patent.

72.    SH Korea and its attorney made arguments to secure allowance of the application that issued as the '863 Patent that could not have been made, but for their non-disclosure of the prior art SH Korea Model SH-CTBR1/SH-CTBR2/T40 cold trap products.

73.    The US Patent Office relied upon those arguments in allowing the application that issued as the '863 Patent.

74.    In obtaining allowance of the application that issued as the '863 Patent, the named inventors, those at SH Korea subject to the "duty of candor" set forth in 37 CFR §1.56, and/or SH Korea's attorney, committed fraud on the Patent Office in violation of the duty of candor, by at least the intentional non-disclosure of at least the prior art SH Korea Model SH-CTBR1/SH-CTBR2/T40 cold trap products, and compounding the nondisclosure by misleading the Patent Office through making arguments known to be false in light of at least the withheld SH Korea prior art, thereby rendering the '863 Patent unenforceable for inequitable conduct.

### COUNT IV: (N.J. COMMON LAW FRAUD)
### Defendants SH Korea, SH USA & Mr. Jihoon Bang

75.    Across repeats and re-alleges the allegations in preceding paragraphs 1-74 as though fully set forth herein.

76.    Despite having clear knowledge of the structural identity between the prior art SH Korea Model SH-CTBR1/SH-CTBR2/T40 cold trap products and the Across T40 Cold Trap products sold by Across since September 2018, SH Korea, SH USA, and their corporate officer, Mr. Jihoon Bang, along with their attorney, Mr. Rohlfs, have knowingly made false, factual assertions to Across, in the October 29, 2019 letter and November 6, 2019 phone call, specifically that the Across T40 Col Trap products infringe the '863 Patent.  Those infringement assertions are a knowing, material misrepresentation of a presently existing fact.

77.    Upon information and belief, two or more of SH Korea, SH USA, and their corporate officer, Mr. Jihoon Bang, along with their attorney, Mr. Rohlfs, knew that such assertions were false when made, but nevertheless planed to make, and made, those assertions with the wrongful intention to cause Across to stop selling the Across T40 Col Trap products that competed with products sold by the SH Defendants, or, alternatively, to defraud Across of money in order to continue to do what Across is lawfully allowed to do without any payment to the SH Defendants.

78.    Upon information and belief, when the accusations were made to Across, Defendants intended that Across rely upon those false assertions to Across's detriment and the SH Defendants' individual and/or collective benefit.

79.    Across reasonably relied upon those false assertions and, consequently, was damaged in that it was forced spend money to engage counsel to look into the accusations, to incur the cost of having one of its 2015 T40 Cold Trap products that it had in out of state storage shipped to its New Jersey office, and to have this Complaint prepared and initiate and pursue this action in order to vindicate its legitimate rights.

### COUNT V: (N.J. CIVIL CONSPIRACY)
### <u>Defendants SH Korea, SH USA & Mr. Jihoon Bang</u>

80.    Across repeats and re-alleges the allegations in preceding paragraphs 1-79 as though fully set forth herein.

81.    Upon information and belief, two or more of SH Korea, SH USA, and their corporate officer, Mr. Jihoon Bang, along with their attorney, Mr. Rohlfs, entered into a joint agreement to falsely, and fraudulently, allege that Across infringed the '863 Patent.

81.    Such false allegations were made, upon information and belief, for the purpose of committing an unlawful act, namely to force Across to abandon its lawful sales of its T40 Cold

Trap products that competed with products sold by the SH Defendants, or to unlawfully exact payments from Across for the privilege of doing what it was already entitled to lawfully do without such payments.

82.    In furtherance of the conspiracy, SH Korea and SH USA, acting in concert with each other and Mr. Jihoon Bang, had Mr. Jihoon Bang call Across and demanded that Plaintiff pay Defendants a license fee or Defendants' would sue Across for infringement of the '863 Patent.

83.    Across has been damaged in that it was forced spend money to engage counsel to look into the accusations, to incur the cost of having one of its 2015 T40 Cold Trap products that it had in out of state storage shipped to its New Jersey office, and to have this Complaint prepared and initiate and pursue this action in order to vindicate its legitimate rights.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Across, respectfully asks this Court to enter judgment in favor of Plaintiff and against Defendants, and all persons in active concert or participation therewith granting the following relief:

A.    Entry of a declaratory judgment of non-infringement that the Across T40 Cold Trap products do not, and have not, infringed any claim of the '863 Patent, directly, indirectly, or contributorily, if the '863 Patent is not invalid or unenforceable;

B.    Entry of a declaratory judgment that the claims of the '863 Patent are all invalid;

C.    Entry of a declaratory judgment that the '863 Patent is unenforceable;

D.    Entry of a declaratory judgment finding that Defendants' baseless accusations of infringement render this matter an exceptional case under 35 U.S.C. §285, for which they are to be held jointly and severally liable, and, as such, awarding Across its reasonable attorneys' fees, expenses and costs incurred in connection with this action;

E.      Enjoining all Defendants and their counsel from charging infringement or instituting any action for enforcement of the '863 Patent against Across, or its customers, relating to the Across T40 Cold Trap products;

F.      Awarding Plaintiff money damages from defendants SH Korea, SH USA and Mr. Jihoon Bang, jointly and severally, in an amount sufficient to compensate Plaintiff for its costs, expenses and attorney's fees incurred as a result of Defendants' fraudulent activities and their wrongful conspiracy to harm Across; and

G.      Such other relief that Across is entitled to under the law, and any other further relief that this Court or a jury may deem just and proper under the circumstances.

## JURY DEMAND

Across demands a trial by jury on all issues in this Complaint triable thereto.

Respectfully submitted,

WEITZMAN LAW OFFICES, LLC

Dated: December 5, 2019          By:   s/ Richard Straussman
                                       Kenneth S. Weitzman (NJ Bar No. 021451992)
                                       Richard Straussman (NJ Bar No. 308992019)
                                       425 Eagle Rock Ave., Suite 102
                                       Roseland, NJ 07068
                                       Phone: (973) 403-9940
                                       Fax: (973) 403-9944
                                       kweitzman@weitzmanip.com
                                         *Attorneys for Plaintiff,*
                                           *Across International, LLC*

## CERTIFICATION PURSUANT TO L.CIV. R. 11.2

Pursuant to L. Civ. R. 11.2, the undersigned hereby certifies that this matter is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

WEITZMAN LAW OFFICES, LLC

Dated: December 5, 2019      By:  s/ Richard Straussman
         Kenneth S. Weitzman (NJ Bar No. 021451992)
         Richard Straussman (NJ Bar No. 308992019)
         425 Eagle Rock Ave., Suite 102
         Roseland, NJ 07068
         Phone: (973) 403-9940
         Fax: (973) 403-9944
         kweitzman@weitzmanip.com
         *Attorneys for Plaintiff,*
           *Across International, LLC*

## CERTIFICATION PURSUANT TO L.CIV. R. 201.1

Pursuant to L. Civ. R. 201.1, the undersigned counsel for Plaintiff hereby certifies that, in addition to money damages, Plaintiff seeks injunctive and other equitable relief, and therefore this action is not appropriate for compulsory arbitration.

WEITZMAN LAW OFFICES, LLC

Dated: December 5, 2019      By:  s/Richard Straussman
         Kenneth S. Weitzman (NJ Bar No. 021451992)
         Richard Straussman (NJ Bar No. 308992019)
         425 Eagle Rock Ave., Suite 102
         Roseland, NJ 07068
         Phone: (973) 403-9940
         Fax: (973) 403-9944
         kweitzman@weitzmanip.com
         *Attorneys for Plaintiff,*
           *Across International, LLC*